1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10   BRETT PETERSON, D.D.S.;              No.  2:15-cv-00801-JAM-EFB
     B.O.L.T., an unincorporated
11   association of motorcycle
     riders and enthusiasts; JOHN
12   DALKE, an individual; MARK          ORDER GRANTING IN PART AND
     TEMPLE, an individual,              DENYING IN PART DEFENDANTS
13                                       FARROW AND DIMICELI'S MOTION TO
                    Plaintiffs,          DIMISS PLAINTIFFS' SECOND
14                                       AMENDED COMPLAINT
          v.
15
     JOSEPH A. FARROW,
16   Commissioner California
     Highway Patrol; MICHAEL
17   GOOLD, in his official
     capacity as Chief of Police
18   of the City of Rancho
     Cordova; SCOTT R. JONES, in
19   his official capacity as the
     Sheriff of County of
20   Sacramento; ROBERT DIMICELI
     a.k.a. ROBERT DI MICELI,
21   Officer of the California
     Highway Patrol; STEPHEN
22   CARROZZO, Rancho Cordova
     police officer and Deputy
23   Sheriff; KAMALA HARRIS, in
     her official capacity as
24   California Attorney General,

25                  Defendants.

26

27        Plaintiffs Brett Peterson, B.O.L.T. (short for, "Bikers of

28   Lesser Tolerance"), John Dalke, and Mark Temple sued the

                                  1

following Defendants—Sheriff of the County of Sacramento Scott R. Jones in his official capacity, Chief of Police of the City of Rancho Cordova Michael Goold in his official capacity, and Rancho Cordova Police Officer Stephen Carrozzo in his individual capacity (collectively, "Municipal Defendants"); California Highway Patrol Officer Robert Dimiceli in his individual capacity, and California Highway Patrol Commissioner Joseph A. Farrow in his official capacity (collectively, "State Defendants"); and California Attorney General Kamala Harris in her official capacity ("Defendant Harris")—under 42 U.S.C. § 1983 for alleged violations of the First, Second, Fourth, and Fourteenth Amendments to the United States Constitution.

State Defendants move to dismiss and/or strike claims in Plaintiffs' Second Amended Complaint (SAC) (Doc. #44) under Federal Rules of Civil Procedure ("Rules") 8 and 12(b)(6), (Doc. #54). For the reasons stated below, State Defendants' motion is GRANTED in part and DENIED in part.[1]

I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

"Plaintiffs Peterson, Dalke, and Temple . . . are individuals with a class M1 motorcycle license who, at all times relevant herein, resided in the State of California."  SAC ¶ 10. "Plaintiff B.O.L.T. is an unincorporated association of motorcycle riders and enthusiasts[,]" "focusing on the unconstitutional enforcement [and constitutionality] of helmet

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for May 17, 2016.

1    laws . . . ."  Id. ¶¶ 11, 13.

2         Plaintiffs allege that "Defendants have an unwritten policy,

3    custom[,] and practice of allowing officers to stop motorcyclists

4    and issue citations for substandard helmets based on visual

5    criteria, and the officer's subjective opinion of whether the

6    helmet would, if tested, conform to federal safety standards[,]"

7    id. ¶ 44, "regardless of whether the officer has tangible and

8    documentary evidence to believe that (i.) there has been a

9    determination of non-compliance with [Federal Motor Vehicle

10   Safety Standard (FMVSS)] 218[, 49 C.F.R. § 571.218 (2011), the

11   federal standard establishing minimum performance requirements

12   for motorcycle helmets], or (ii.) that the motorcyclist has

13   knowledge that the helmet has been determined not to comply with

14   FMVSS 218[,]" id. ¶ 46.  Plaintiffs allege they "have been cited

15   for wearing helmets that [D]efendants' officers considered to be

16   in violation of the helmet law," as a result of this unwritten

17   policy, custom, and practice.  Id. ¶ 47.

18        On April 10, 2015, Plaintiffs brought this action against

19   Defendants (Doc. #1) and on July 1, 2015, Plaintiffs filed their

20   First Amended Complaint ("FAC," Doc. #5).  In response,

21   Defendants filed motions to dismiss (Doc. ##13, 18) and the Court

22   granted the motions under Rule 8, giving Plaintiffs leave to

23   amend (Doc. #42).  On March 3, 2016, Plaintiffs filed their SAC

24   (Doc. #44).  The SAC states nine causes of action brought under

25   42 U.S.C. § 1983 of which the first three claims are brought

26   specifically against one or more of the State Defendants: (1)

27   injunctive and declaratory relief against Defendant Farrow for

28   Fourth Amendment violations; (2) damages against Dimiceli and

1  Carrozzo for conspiracy and Fourth Amendment violations; and (3)

2  damages against Dimiceli and Carrozzo for First Amendment

3  violations.   The Court now addresses the merits of State

4  Defendants' motion to dismiss these three claims (Doc. #54).

5

6                      II.   OPINION

7       A.   Judicial Notice

8       State Defendants request that the Court take judicial notice

9  (Doc. #56) of the following documents: Exhibit A–"California

10 Highway Patrol (CHP) General Order 100.68, Chapter 4-3, also

11 known as CHP's 'Enforcement Policy'," id. at 2:4-7; Exhibit B–

12 "[t]he contents of California Penal Code Sections cited in

13 Attorney General Harris's Motion to Dismiss[,]" id. at 2:8-9; and

14 Exhibit C–"[t]he contents of three publicly available webpages:

15 (a) https://oag.ca.gov/firearms/exemptpo, posted on the Attorney

16 General's website . . .;

17 (b) http://www.boltofca.com/files/Enforcement_Policy.pdf, posted

18 on Plaintiff B.O.L.T.'s website; and

19 (c) http://www.boltofca.com/NutsandBolts.html, posted on

20 Plaintiff B.O.L.T.'s website[,]" id. at 2:10-15.   Plaintiffs do

21 not oppose State Defendants' request.   Exhibit A is a judicially

22 noticeable public record, and State Defendants' request for

23 judicial notice is GRANTED.   See United States v. Thornton, 511

24 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a

25 Bureau of Prisons policy statement).   The documents in Exhibit B

26 are part of the record in this case, and the request is DENIED as

27 unnecessary.   State Defendants' request for judicial notice of

28 Exhibit C—publicly available webpages—is GRANTED "but not for the

                              4

1    truth of [the webpages'] contents."  Brodsky v. Yahoo! Inc., 630

2    F. Supp. 2d 1104, 1111 (N.D. Cal. 2009); see also United States

3    v. Kane, No. 2:12-cr-250-JAD-VCF, 2013 WL 5797619, *9 (D. Nev.

4    Oct. 28, 2013) (citations omitted) ("When a court takes judicial

5    notice of publications like websites and newspaper articles, the

6    court merely notices what was in the public realm at the time,

7    not whether the contents of those articles were in fact true.").

8        B.   Analysis

9            1.   Motion to Dismiss Under Rule 8

10       State Defendants contend that all three claims against them

11   in Plaintiffs' SAC should be dismissed for failure to abide by

12   Rule 8(d)(1)'s requirement that "[e]ach allegation must be

13   simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1). The Court

14   disagrees and finds that the SAC meets the minimal requirements

15   of Rule 8 by identifying which claims are being brought against

16   which defendants.  State Defendants' motion to dismiss under Rule

17   8 is therefore denied.

18           2.   Fourth Amendment Violations

19       State Defendant Farrow seeks dismissal of Plaintiffs' first

20   claim for relief—that he violated Plaintiffs' Fourth Amendment

21   right to be free from unlawful seizure by effectuating an

22   unlawful practice and policy amongst California Highway Patrol

23   (CHP) in the stopping and citing of motorcyclists for suspected

24   helmet law violations—under Rule 12(b)(6) for failure to state a

25   viable claim.

26           a.   CHP's Stop Policy

27       State Defendants contend: "Even if [Plaintiffs'] bare

28   allegation [challenging CHP's policy for stopping motorcyclists]

1  w[as] taken as both true and sufficient, a policy of stopping
2  motorcyclists on the basis of 'visual criteria' nonetheless meets
3  the Fourth Amendment standard for reasonable suspicion." Def.
4  Farrow & Def. Dimiceli's Mot. to Dismiss ("Mot.") 7:12-14, ECF
5  No. 54-1.

6      Plaintiffs allege in their SAC that "Defendants have an
7  unwritten policy, custom[,] and practice of allowing officers to
8  stop motorcyclists . . . for substandard helmets based on visual
9  criteria." SAC ¶ 45.

10     In Easyriders Freedom F.I.G.H.T. v. Hannigan, the Ninth
11  Circuit held that "an officer need not have a particularized
12  suspicion that a motorcyclist has actual knowledge that his
13  helmet does not comply with [FMVSS] 218 if other objective
14  evidence, such as the appearance of the helmet, sufficiently
15  supports an investigatory stop." 92 F.3d 1486, 1497 (9th Cir.
16  1996).  Because Easyriders holds that "the CHP may stop
17  motorcyclists based on the appearance of their helmets[,]"
18  Plaintiffs have failed to plead a claim related to the stopping
19  of motorcyclists that entitles them to relief and cannot do so
20  under the governing law.  See id.  State Defendants' motion to
21  dismiss is granted with prejudice as to the CHP's policy of
22  stopping motorcyclists based on visual criteria.
23
24          b.   CHP's Policy for Citing Motorcyclists
25              1.  Written Policy
26     State Defendants contend that "[s]ince [the] Easyriders
27  [decision], CHP has adopted a formal written policy that limits
28  helmet law citations to situations when probable cause is well-

1    established."  Mot. 8:16-17.

2        CHP's Enforcement Manual states that enforcement of the

3    helmet law is limited to when a motorcyclist is (a) "not wearing

4    any type of head covering," or (b) "wearing a head covering which

5    is obviously not a motorcycle helmet, such as a Styrofoam bicycle

6    helmet, football helmet, ball cap, scarf, stocking cap, leather

7    aviator cap, or any variation of a fabric cap, et al."  Ex. A—CHP

8    General Order 100.68, Chapter 4-3, § 2(c)(8).

9        Plaintiffs do not challenge this official policy nor do they

10   dispute its compliance with the Fourth Amendment.  However,

11   Plaintiffs still allege that CHP has an "unwritten" policy or

12   custom allowing unlawful citations to be issued.  SAC ¶ 45.

13                          2.  Unwritten Policy

14       State Defendants contend that "the SAC contains nothing more

15   than conclusory allegations of unconstitutionality and formulaic

16   recitations of the elements of the probable cause standard

17   outlined in Easyriders, namely that CHP policy allows officers to

18   cite motorcyclists without regard to actual knowledge of non-

19   compliance and 'leaves it up to [the citing] officer[']s use of

20   good judgment' about compliance with the [helmet] law."  Mot.

21   10:9-13.  State Defendants argue that "[m]issing from the [SAC]

22   are any allegations that CHP officers lacked probable cause to

23   believe that Plaintiffs had actual knowledge to justify any

24   citations[,]" id. at 11:12-14; the SAC contains, "at best,

25   allegations of sporadic and isolated events that cannot, as a

26   matter of law, establish a widespread practice throughout CHP of

27   constitutional violations[,]" id. at 12:2-4; and "Plaintiffs fail

28   to allege any specific facts to support their bare assertion that

                                    7

1    Defendant Farrow failed to train CHP officers[,]" id. at 14:5-7.

2        Plaintiffs respond: "The pleadings are very detailed about

3    defendant policymaker's lack of action and persistent abuse, even

4    when complaints are lodged against individual officers."  Opp'n

5    to Mot. ("Opp'n") 3:19-20, ECF No. 59.

6        In Easyriders, the Ninth Circuit held that in order to issue

7    a citation "the ticketing officer must have probable cause to

8    believe that the specific intent, caused by the motorcyclist's

9    actual knowledge of non-conformity, exists." 92 F.3d at 1499.

10       A plaintiff seeking to impose liability on a local entity

11   under § 1983 is required "to identify a municipal 'policy' or

12   'custom' that caused the plaintiff's injury."  Bd. of Cty.

13   Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 403 (1997);

14   Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694

15   (1978).  "[T]o establish an official policy or custom sufficient

16   for Monell liability, a plaintiff must show a constitutional

17   right violation resulting from (1) an employee acting pursuant to

18   an expressly adopted official policy; (2) an employee acting

19   pursuant to a longstanding practice or custom; or (3) an employee

20   acting as a 'final policy maker.'"  Delia v. City of Rialto, 621

21   F.3d 1069, 1081-82 (9th Cir. 2010); rev'd on other grounds

22   Filarsky v. Delia, 132 S. Ct. 1657 (2012).

23       Absent a formal governmental policy, [a plaintiff]
         must show a "longstanding practice or custom which
24       constitutes the standard operating procedure of the
         local government entity." Gillette[v. Delmore], 979
25       F.2d [1342,] 1346-47 [(9th Cir. 1992)].  The custom
         must be so "persistent and widespread" that it
26       constitutes a "permanent and well settled city
         policy." Monell v. Dept. of Soc. Serv. of N.Y., 436
27       U.S. 658, 691 . . . (1978).  Liability for improper
         custom may not be predicated on isolated or sporadic
28       incidents; it must be founded upon practices of

sufficient duration, frequency and consistency that
the conduct has become a traditional method of
carrying out policy. <u>Bennett v. City of Slidell</u>, 728
F.2d 762, 767 (5th Cir. 1984); <u>see also</u>, <u>Meehan v.
[L.A. Cty.]</u>, 856 F.2d 102 (9th Cir. 1988) (two
incidents not sufficient to establish custom); <u>Davis
v. Ellensburg</u>, 869 F.2d 1230 (9th Cir. 1989) (manner
of one arrest insufficient to establish policy).

<u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996).  In order to

survive dismissal, <u>Monell</u> allegations must "identify . . .

specific policies or customs, explain how those policies or

customs were deficient, [and] explain how they specifically

caused plaintiff harm."  <u>Rodelo v. City of Tulare</u>, No. 1:15-cv-

01675-KJM-BAM, 2016 WL 561520, at *4 (E.D. Cal. Feb. 12, 2016).

The SAC contains the following pertinent allegations:

"[D]efendant Farrow had actual knowledge of CHP statewide

Enforcement Guidelines since at least 1995 as mandated by

[<u>Easyriders</u>,]" SAC ¶ 61; "[D]efendant Farrow has intentionally

disregarded the constitutional limitations on helmet law

enforcement, and by inaction and failing to discipline, allowed

CHP officers to cite motorcyclists for violation of the helmet

law without probable cause[,]" <u>id.</u> ¶ 66; Peterson was wrongfully

arrested and filed an internal affairs complaint to the CHP, <u>id.</u>

¶¶ 68, 69; "[a]ll [D]efendants have been placed on notice of the

violations by way of internal affairs complaints[,]" <u>id.</u> ¶ 80;

"Defendants have failed to provide their officers with any list

of helmets which have been tested and have failed the DOT

Certification[,]" <u>id.</u> ¶ 81; and "Defendants have failed to

provide their officers with any training with respect to the

collection of evidence necessary to support a [h]elmet

[t]icket[,]" <u>id.</u> ¶ 82.

1    The Court finds that Plaintiffs' allegations fail to

2  sufficiently identify specific instances of purported misconduct

3  from which it can be inferred that the CHP has an unwritten

4  custom or policy which systematically condones or endorses the

5  improper citing of motorcyclists; instead Plaintiffs' SAC alleges

6  isolated events from which no inference can be drawn that the

7  practice violates the requirements set forth in Easyriders or is

8  widespread.

9    With respect to Plaintiffs' failure to train theory of

10  liability, the Court finds that Plaintiffs have failed to set

11  forth facts that demonstrate that the CHP acted with "deliberate

12  indifference to the rights of persons with whom the [untrained

13  employees] come into contact."   See City of Canton, Ohio v.

14  Harris, 489 U.S. 378, 388 (1989).   A policy amounts to deliberate

15  indifference "'when the need for more or different action 'is so

16  obvious, and the inadequacy [of the current procedure] so likely

17  to result in the violation of constitutional rights, that the

18  policymakers . . . can reasonably be said to have been

19  deliberately indifferent to the need.'''"   Mortimer v. Baca, 594

20  F.3d 714, 723 (9th Cir. 2010) (alterations in original) (quoting

21  Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1477-78 (9th

22  Cir. 1992) (quoting Harris, 489 U.S. at 390)).   Plaintiffs allege

23  that the CHP fails to provide officers with a list of decertified

24  helmets and fails to provide training on the collection of

25  evidence necessary to support a "Helmet Ticket."   SAC ¶¶ 81-82.

26  Taken as true, these allegations are still insufficient and

27  irrelevant.   The Court also finds State Defendants' arguments

28  persuasive. First, "given CHP's official policy of citing

10

1  motorcyclists only if they do not wear *any* motorcycle helmets, a

2  failure to provide officers with a list of de-certified

3  motorcycle helmets is not an 'obvious' deficiency[,]" Mot. 15:2-

4  5, and second, "[a]n officer can easily have grounds to issue a

5  ticket without training on collecting the evidence to support a

6  ticket challenged later in court," id. at 15:8-10.

7      For the above stated reasons, Plaintiffs' allegations fail

8  to set forth a claim against Farrow upon which relief can be

9  granted, and State Defendants' Motion to Dismiss the first claim

10  against Farrow is granted with prejudice.

11                      c.   Conspiracy

12      State Defendants also contend that Plaintiffs' conspiracy

13  allegation in paragraph 115 of their second claim for relief

14  should be dismissed.  Specifically, State Defendants argue:  "The

15  SAC contains no allegation, nor can it, that enforcement of the

16  helmet law is designed to deprive a protected class of the same

17  rights enjoyed by others[,]" as required to successfully assert a

18  conspiracy claim under 42 U.S.C. § 1985(3).  Mot. 21:23-24.

19  State Defendants also argue that there is "no allegation that

20  Officer Dimiceli was motivated by a racial, or perhaps otherwise

21  class-based, invidiously discriminatory animus."  Id. at 21:26-

22  27.

23      Plaintiffs brief response in opposition to this argument

24  states in a conclusory fashion that "Plaintiffs make it perfectly

25  clear that they were subjected to unconstitutional targeted

26  enforcement of the state's helmet law[;] Defendants Dimiceli and

27  Carrozzo have shown great animus towards Plaintiffs and

28  specifically mention B.O.L.T. at each contact."  Opp'n 8:3-6.

1      To bring a cause of action successfully under § 1985(3),

2  Plaintiffs must allege four elements:  "(1) a conspiracy; (2) for

3  the purpose of depriving, either directly or indirectly, any

4  person or class of persons of the equal protection of the laws,

5  or of equal privileges and immunities under the laws; and (3) an

6  act in furtherance of this conspiracy; (4) whereby a person is

7  either injured in his person or property or deprived of any right

8  or privilege of a citizen of the United States."  United Bhd. of

9  Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828-29

10  (1983); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir.

11  1992).  To satisfy the second element requires not only the

12  identification of a legally protected right, but also a

13  deprivation of that right motived by "some racial, or perhaps

14  otherwise class-based, invidiously discriminatory animus behind

15  the conspirators' action."  Griffin v. Breckenridge, 403 U.S. 88,

16  102 (1971).  "Generally, . . . section 1985(3) is extended beyond

17  race 'only when the class in question can show that there has

18  been a governmental determination that its members 'require and

19  warrant special federal assistance in protecting their civil

20  rights.''"  Sever, 978 F.2d at 1536 (quoting Schultz v. Sundberg,

21  759 F.2d 714, 718 (9th Cir.1985) (quoting DeSantis v. Pac. Tel. &

22  Tel. Co., 608 F.2d 327, 333 (9th Cir.1979))).  Thus, in

23  attempting to bring a cause of action under § 1985(3), plaintiffs

24  must show that they are in a class that the courts have

25  designated as a suspect or quasi-suspect class "requiring more

26  exacting scrutiny or that Congress has indicated through

27  legislation that the class required special protection."  Id.

28  The term "class," as used in the statute "unquestionably connotes

12

something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 269 (1993); <u>Orin v. Barclay</u>, 272 F.3d 1207, 1217 n.4 (9th Cir. 2001).  The conspiracy in question must specifically "aim at a deprivation of the equal enjoyment of rights secured by the law to all." <u>Orin</u>, 272 F.3d at 1217 (quoting <u>Griffin</u>, 403 U.S. at 102).

Plaintiffs have not cited § 1985(3) as the basis for their conspiracy claim. Rather, they have simply alleged that: "Based upon information and belief, Dimiceli and Carrozzo have conspired to violate Plaintiffs' rights be using the helmet law as a vehicle to violate Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizures." SAC ¶ 115.  To the extent Plaintiffs intended this paragraph to be a separate claim for conspiracy, the claim fails since Plaintiffs have not alleged that Dimiceli and Carrozzo were motivated by racial, or some other class-based, invidiously discriminatory animus.  All motorcycle riders are subject to helmet laws and motorcycle riders have not been singled out by the government as needing enhanced federal protection.  Plaintiffs' conspiracy allegation in their second claim is therefore dismissed with prejudice.

### 3.   First Amendment Retaliation

State Defendants contend that Plaintiffs' third claim for relief-- alleging Dimiceli committed First Amendment violations by retaliating against Temple and Peterson for engaging in protected First Amendment activity--should be dismissed for failure to state a claim upon which relief can be granted.

In order to state a First Amendment retaliation claim under

1   § 1983, Plaintiffs "must establish that (1) [they] engaged in

2   [First Amendment activity]; (2) the government officials took an

3   adverse action against [them]; and (3) [their protected conduct]

4   was a substantial or motivating factor for the adverse action."

5   Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 923 (9th Cir.

6   2004) (citing Roe v. City of San Diego, 356 F.3d 1108, 1112 (9th

7   Cir. 2004)).  The above test has traditionally been applied in

8   the context of public employment, but a similar analysis is

9   appropriate in situations such as here where the parties do not

10  share an employment relationship.  See Sloman v. Tadlock, 21 F.3d

11  1462, 1469 (9th Cir. 1994); see also Mendocino Envtl. Ctr. v.

12  Mendocino Cty., 14 F.3d 457, 459–60 (9th Cir. 1994); Cain v.

13  Tigard-Tualatin School Dist. 23J, 262 F. Supp. 2d 1120, 1125 n.1

14  (D. Or. 2003) (applying test found in context of public

15  employment to non-employment First Amendment retaliation claim).

16      As a preliminary matter, Plaintiffs allege that Dimiceli and

17  Carrozzo "have been in communication with each other, sharing

18  filed notes and research on members of B.O.L.T., or purported

19  members."  SAC ¶ 160.  Further, "Dimiceli and Carrozzo have

20  conspired to violate Plaintiffs' First Amendment associational

21  rights by using the helmet law as a vehicle to punish

22  [P]laintiffs . . . ."  Id. ¶ 161.  The above allegations are

23  conclusory and not accepted as true.  See Ashcroft v. Iqbal, 556

24  U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

25  U.S. 544, 555 (2007)) (A court is not required to accept as true

26  a "legal conclusion couched as a factual allegation.")  The Court

27  will thus consider the plausibility of Peterson and Temple's

28  First Amendment retaliation claims against Dimiceli separately.

14

1

2               a.   <u>Peterson's Claim Against Dimiceli</u>

3        Plaintiff Peterson's claim against Dimiceli appears to be

4   premised only on freedom of association. The SAC alleges that

5   Peterson was arrested by Dimiceli based on a perceived

6   association with B.O.L.T.  State Defendants contend that "no

7   allegations in the SAC . . . identify any way in which Officer

8   Dimiceli has allegedly prevented Plaintiff[] Peterson . . . from

9   associating with . . . other[s] for motorcycle rides or any other

10  activity in which [Plaintiffs] allege B.O.L.T. engages."  Mot.

11  18:5-8. State Defendants also argue that "there is no

12  constitutional right to 'social association.'"  <u>Id.</u> at 18:11

13  (citing <u>Kohlman v. Village of Midlothian</u>, 833 F. Supp. 2d 922,

14  939 (N.D. Ill. 2001)).  Further, State Defendants contend that

15  Peterson's claim should be dismissed because as the SAC alleges,

16  "Peterson . . . was not a member of B.O.L.T. nor an associate of

17  Temple and Dalke[,]" <u>id.</u> at 18:22-23 (citing SAC ¶ 146); "[i]t

18  stands to reason that Peterson's right to associate with B.O.L.T.

19  could not have been violated when he was not a member of B.O.L.T.

20  and not associating with B.O.L.T. in the first place[,]" <u>id.</u> at

21  18:23-25.

22       As to State Defendants' first argument, expressive

23  association involves association "for the purpose of engaging in

24  protected speech or religious activities." <u>Bd. of Dirs. of</u>

25  <u>Rotary Int'l v. Rotary Club of Duarte</u>, 481 U.S. 537, 544 (1987);

26  <u>see also</u> <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 622 (1984)

27  (protection for collective "pursuit of a wide variety of

28  political, social, economic, educational, religious, and cultural

1    ends"). While the State Defendants cite Kohlman, 833 F. Supp. 2d

2    at 937, in support of their argument, their reliance on this case

3    is misplaced. In Kohlman, the court found that "[t]he

4    plaintiffs . . . [did] not identify any expressive activity as

5    they [had] not pointed to any political, religious, or other

6    viewpoints advocated or commonly held by members of the Chicago

7    Chapter of the Hells Angels Motorcycle Club." Id. Unlike the

8    allegations in Kohlman, in the instant case, Plaintiffs'

9    allegation that "B.O.L.T. is . . . a civil rights organization

10   focusing on the unconstitutional enforcement . . . [and]

11   constitutionality of helmet laws." (SAC ¶ 4) is sufficient to

12   avoid dismissal simply on the basis of Kohlman.

13       State Defendants' next argument that this claim should be

14   dismissed because Peterson did not actually associate with

15   B.O.L.T., also fails because the Supreme Court recently held that

16   in a freedom of association case a plaintiff need not engage in

17   actual First Amendment activity so long as defendants perceived,

18   and were unlawfully motivated by, protected conduct. Heffernan

19   v. City of Paterson, N.J., 136 S. Ct. 1412, 1418 (April 26, 2016)

20   ("When an employer demotes an employee out of a desire to prevent

21   the employee from engaging in political activity that the First

22   Amendment protects, the employee is entitled to challenge that

23   unlawful action under the First Amendment and 42 U.S.C. § 1983—

24   even if, as here, the employer makes a factual mistake about the

25   employee's behavior."). Accordingly, it is immaterial whether

26   Peterson associated with B.O.L.T. before the issuance of

27   motorcycle citations so long as Dimiceli mistakenly believed he

28   was engaged in such association and was motivated by unlawful

16

1    aims when citing Peterson. Thus, dismissal based only upon the

2    fact that Peterson was not associated with B.O.L.T. is not

3    warranted.

4         However, in order for Peterson's claim against Dimiceli to

5    survive, Peterson must still demonstrate the requisite causal

6    connection between his perceived expressive association and the

7    citations that were issued to him by Dimiceli. In attempting to

8    satisfy this requirement, Plaintiffs have alleged that Dimiceli

9    specifically referenced B.O.L.T., Temple and Dalke when he

10   arrested Peterson.  But, Peterson was cited for failing to comply

11   with helmet law requirements, and Dimiceli's alleged off-hand

12   comments about B.O.L.T. do not show that he was motivated by any

13   unlawful retaliatory aims. Contrary to Plaintiffs' conclusory

14   allegation, associational animus is not evident from this fact

15   alone.   Plaintiffs have failed to provide sufficient specific

16   factual allegations to support a plausible inference that

17   Peterson's perceived membership in B.O.L.T. substantially

18   motivated Dimiceli to arrest him.  Plaintiffs have been given

19   three chances to properly plead this claim and any further

20   attempt to amend would be futile. Peterson's claim against

21   Dimiceli for First Amendment retaliation is dismissed with

22   prejudice.

23              b.    Temple's Claim Against Dimiceli

24       In support of their motion to dismiss Temple's First

25   Amendment claim against Dimiceli, State Defendants argue that the

26   claim cannot be based on Temple's freedom of association because

27   "there are no specific allegations by Temple that Officer

28   Dimiceli's citations/arrest of him were based on association with

                                17

B.O.L.T."  Mot. 19:5-7. Further, "there are no allegations of conduct specific to Officer Dimiceli concerning any associational animus to Temple" and "the sweeping conclusions are insufficient to state a claim."  Id. at 19:7-8.

State Defendants also argue that Temple's retaliation claim based on his right to petition should be dismissed for the following reasons:  "the citations occurring before the [filing of Temple's] internal affairs complaint could not have been in retaliation for the subsequently submitted internal affairs complaint[,]" id. at 19:27-28; the 2010 events "are outside the prevailing two-year statute of limitation, making them unviable as basis for a cause of action[,]" id. at 20:1-2; and "to the extent Temple would try to argue that the May 2013 arrests were in retaliation for the June 2010 internal affairs complaint, the three-year period in between fails to satisfy the requirement that the internal affairs complaint filing was the motivating or substantial factor in Temple's arrests three years later[,]" id. at 20:10-13.

Plaintiffs' opposition does not directly address these arguments and, instead, merely repeats Temple's allegations in the SAC or focuses primarily on Temple's claim against Defendant Carozzo rather than Defendant Dimiceli. Indeed, the opposition spends four paragraphs talking about apparent actions of Carrozzo, not Dimiceli, and mixes in Plaintiff Dalke, who has made no claim against Officer Dimiceli.

Plaintiffs have failed to plausibly allege that any First Amendment activity caused Dimiceli to issue citations to or arrest Temple.  Temple's internal affairs complaints were filed

1   after each arrest not before and thus could not have motivated

2   such behavior.  Further, the three year gap between Temple's 2010

3   complaint and 2013 arrests renders it implausible that any First

4   Amendment activity was a substantial motivating factor in

5   Dimiceli's issuance of helmet citations. No actionable

6   retaliation by Dimiceli against Temple has been properly alleged

7   in the SAC and any further attempt to amend this claim would be

8   futile.  Temple's claim against Dimiceli for First Amendment

9   retaliation is therefore dismissed with prejudice.

10                    d.   Qualified Immunity

11       State Defendants argue that Officer Dimiceli is entitled to

12  qualified immunity from Peterson and Temple's First Amendment

13  claims.  Since the Court above finds that Plaintiffs have failed

14  to plausibly allege any claim against Dimiceli for First

15  Amendment retaliation, the Court need not, and does not reach

16  this issue.

17  ///

18  ///

19                         III.   ORDER

20       For the reasons set forth above, the Court DENIES State

21  Defendants' Motion to Dismiss under Rule 8; the Court GRANTS WITH

22  PREJUDICE State Defendants' Motion to Dismiss Plaintiffs' first

23  cause of action against Defendant Farrow; the Court GRANTS WITH

24  PREJUDICE State Defendants' Motion to Dismiss Plaintiffs'

25  conspiracy allegation in the second cause of action; and the

26  Court GRANTS WITH PREJUDICE State Defendants' Motion to Dismiss

27  Plaintiffs' third cause of action against Defendant Dimiceli. The

28  only remaining claim against either of these State Defendants is

                              19

1  Plaintiffs second cause of action against Defendant Dimiceli for

2  alleged Fourth Amendment unlawful seizure violations. Defendant

3  Dimiceli shall file his answer to this claim within twenty days

4  of the date of this Order.

5      IT IS SO ORDERED.

6  Dated: July 6, 2016

7

8                                    _____
                                     JOHN A. MENDEZ,
                                     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28